E. W. HOOD *v.* CARL F. WELCH ET AL

5-5466                                         463 S. W. 2d 362

Opinion delivered February 22, 1971

*Howell, Price, Howell & Barron,* for appellant.

*Reinberger, Eilbott, Smith & Staten,* for appellees.

FRANK HOLT, Justice. This is an action brought by appellant-lessor to recover $115,400.00 from appellees, lessee and his successor corporation, for damages resulting from a fire in the leased building. From an order of the court granting appellees' motion for summary judgment comes this appeal.

Appellant owned a building in Pine Bluff which he leased to appellee Carl F. Welch for "general automobile repair work, storage and automobile paint and body work." Welch took possession and utilized the premises as a body and paint shop. The building was not insured prior to the leasing, nor did the lease agreement make provision for any insurance arrangement. Welch agreed to indemnify appellant for damage or loss caused by his violation of any law and to deliver the premises at the end of the lease in the same condition as received, the usual wear and tear excepted. The lease then provided: "It is agreed that the Lessee shall not be liable to restore any damage caused by fire, windstorm or any other casualty beyond his control."

During the tenure of the lease, one of Welch's employees was working at the body and paint shop with a spray gun when its petcock blew out and began discharging gusts of compressed air which knocked over a five-gallon can of paint thinner. The thinner apparently came into contact with the flames of a nearby gas heater which resulted in a fire damaging the entire building.

Appellant filed suit against Carl F. Welch and Welch Motor Company (which had been organized as corporation successor to the business of Carl F. Welch the individual) for damages to the leased building and resulting loss of rent. His complaint alleged that appellees operated the paint shop in a manner violative of the Pine Bluff fire ordinances and the state fire prevention code and that they were grossly and willfully

negligent in so doing. It further asserted several other incidents of ordinary negligence on the part of appellees for various alleged acts of carelessness. Appellees answered by denying all allegations and by contending that the fire was unavoidable. After the filing and answering of requests for admissions and other interrogatories, appellees moved for summary judgment in that the lease is the only document executed and contains all the agreements entered into between the parties; that the lease specifically exempts the lessee from liability for fire; and that the complaint does not allege that the fire was intentionally caused. After some final amendments, requests for admissions, affidavits and other pleadings, including appellant's response to the motion for summary judgment which asserted that there still remained several relevant and unresolved questions of fact, the trial court granted appellee's motion and dismissed the complaint.

Basically appellant contends on appeal, in his first three points for reversal, that the lease did not relieve the lessee from liability for fires caused by: (1) ordinary negligence; (2) gross negligence or (3) violations of law. The third part of this contention is based upon the following provision of the lease:

9.    Lawful Uses:   The Lessee agrees to indemnify the Lessor against any damage or loss that may be caused by Lessee violating any laws.

This provision, by its very subtitle, appears to relate only to any illegal use, purpose or function that the premises may be put to which could incur penal sanction. However, even if the alleged violations of the city fire ordinances and state code are construed to come within the intended scope of the above provision, nevertheless, proof of such violations would constitute no more than mere evidence of negligence requiring further proof of proximate causation. *Bussell* v. *Missouri Pacific RR. Co.*, 237 Ark. 812, 376 S. W. 2d 545 (1964). It follows then that the pivotal provision of the lease is:

It is agreed that the Lessee shall not be liable to

> restore any damage caused by fire, windstorm or any other casualty beyond his control.

Thus, appellant's first three points for reversal may be reduced to the simple assertion that the lease does not exempt appellee from liability for fire damage caused by his own ordinary negligence or, *a fortiori,* that caused by his gross negligence.

Both parties rely heavily upon the annotation of 15 ALR 3d 786, particularly § 7. The cases compiled therein all involve leases with similarly worded liability exemption provisions and contain various arguments for including, or not including as the case may be, fires caused by negligence within the general "fire" exemption. However, perhaps the most pertinent aspect of that annotation is to be found in § 2 wherein it is stated:

> [W]here the clause is not explicit, the decision on whether it nevertheless exempts the landlord or the tenant from liability for fire due to his own respective negligence are divided, *depending on whether the language of the lease and the surrounding facts indicate that such was the intention of the parties.* [emphasis added]

In the case at bar, the lease is ambiguous as to whether the "fire" exemption extends to all fires, or all non-intentional fires, or to all non-intentional fires caused by ordinary but not gross negligence, or to only unavoidable or avoidable but non-negligently caused fires, or merely to fires beyond the lessee's control. Appellee argues that in the event of ambiguity, the uncertain terms should be construed most strongly against the person drafting the instrument; however, it appears disputed between the parties whether appellant unilaterally devised the lease or whether it was a product of negotiation. Furthermore, on motion for summary judgment doubtful language in a written instrument is to be construed in favor of the party resisting the motion, in this case the appellant. *Brooks* v. *Renner & Co.,* 243 Ark. 226, 419 S. W. 2d 305 (1967). The significance of the failure of either party to insure the premises or to

provide in the lease for its insurance may also constitute a fact question which bears upon the intention of the parties. Quite obviously there remain relevant and unresolved issues of fact.

Judgment should be summarily entered only if the evidence, considered in the light most favorable to the party resisting the motion, presents no genuine issue as to any material fact. *Griffin* v. *Monsanto Co.,* 240 Ark. 420, 400 S. W. 2d 492 (1966); *Wirges* v. *Hawkins,* 238 Ark. 100, 378 S. W. 2d 646 (1964). In other words, summary judgment, even if requested by both parties [see *Wood* v. *Lathrop* 249 Ark. 376, 459 S. W. 2d 808], cannot eliminate genuine issues of material facts, but can only be implemented to decide questions of law. *Browning* v. *Hicks,* 243 Ark. 394, 420 S. W. 2d 545 (1967). Furthermore, we have specifically held that if doubts exist which render the meaning of a written instrument ambiguous, there then arises an issue of fact to be litigated which precludes summary judgment. *Brooks* v. *Renner & Co., supra.*

The material fact issues in the instant case could probably be effectively circumvented, and thus rendered immaterial, simply by determining as a matter of law that any fire exemption clause contained in a lease, unless otherwise specifically qualified, extends to or includes all fires except those intentionally occasioned. Although the various rationales asserted (15 ALR 3d 812—814, § 7 [a]) for so including fires caused by negligence of any degree appear to be quite persuasive, we think that such a policy determination is not permissible in the present circumstances. We are reluctant to find an intent on the part of one party to bind itself for the negligence of the other, unless that intent is unequivocally manifested. See, *e. g., Paul Hardeman, Inc.* v. *J. I. Hass Co.,* 246 Ark. 559, 439 S. W. 2d 281. Whether or not the parties intended to include negligently caused fires within the exemption provision is a question of fact which must yet be determined at a trial on the merits.

In his fourth and final point, appellant argues that

appellee Welch Motor Company should not be dismissed as a party defendant. Appellees, however, readily admit that "the successor corporation is accountable for any contingent liabilities of Carl F. Welch the individual" and thereby render this point moot in the circumstances of the case at bar.

The granting of the motion for summary judgment is reversed and the cause remanded.

HARRIS, C. J., not participating.

FOGLEMAN, J., concurs.

BYRD, J., dissents.

JOHN A. FOGLEMAN, Justice, concurring. I concur because I believe the pertinent contract clause to be clear, unequivocal and unambiguous. So far as material here, it simply relieves the lessee from liability for a fire beyond his control. If, by the exercise of ordinary care, the fire could have been prevented, lessee is liable. The matter seems just that simple to me.