Melba Heston HOOD, Executrix *v.*
Carl F. WELCH and WELCH MOTOR COMPANY

73-268                                              507 S.W. 2d 503

Opinion delivered April 8, 1974
[Rehearing denied May 6, 1974.]

*Howell, Price, Howell & Barron,* for appellant.

*Reinberger, Eilbott, Smith & Staten,* for appellees.

GEORGE ROSE SMITH, Justice. This was originally an action brought by a landlord, E.W. Hood, to recover

damages from his tenant, Carl F. Welch, on the ground that the tenant's negligence or violation of law caused a fire which extensively damaged the leased building. Most of the salient facts were stated in our opinion upon the first appeal and need not be repeated. *Hood v. Welch,* 249 Ark. 1159, 463 S.W. 2d 362 (1971). There we held that the trial court erred in entering a summary judgment for the tenant, because the lease was sufficiently ambiguous to give rise to a question of fact about whether the parties intended to exempt the tenant from liability for fire damage caused by the tenant's negligence.

Hood, the landlord, died before the trial. The cause was revived in the name of his executrix, now the appellant. The jury's verdict was for Welch, the tenant. At the trial the court allowed Welch to testify about conversations with Hood, over the executrix's objection that the dead man's statute makes such testimony inadmissible. Ark. Const., Schedule, § 2 (1874). That ruling presents the principal issue on appeal.

Counsel for Welch insist that the executrix was not entitled to invoke the dead man's statute, because pretrial interrogatories and requests for admissions were directed to Welch and answered during Hood's lifetime. Had those inquiries been propounded by the executrix after Hood's death, the protection of the statute would undoubtedly have been waived under our holding in *Smith v. Clark,* 219 Ark. 751, 244 S.W. 2d 776 (1952), where we followed the majority rule in such a situation:

"It has been held in many cases that the taking of the adverse party's deposition amounts to calling him as a witness whether the deposition is introduced in evidence or not. Some of these cases were reviewed by the Oklahoma Court in *Cox v. Gettys,* 53 Okla. 58, 156 Pac. 892. The court held that the incompetency of testimony imposed by the dead man's statute was waived even though the deposition was never actually filed, saying: 'Any other construction of the statute would enable one party to search the conscience of his adversary, drag to light his private papers and other evidence, and then repudiate the result, if the experiment proved unsatisfactory.' The court also approved the following

language by the Missouri court in *Rice* v. *Waddill,* 168 Mo. 99, 67 S.W. 605: 'Can it differ in principle that, in this case, defendants took plaintiff's deposition, had it duly certified and thereby, in the language of counsel, "heard what she said and that was all he wanted to know," and then suppressed the deposition; whereas, in the cases cited, the deposition was similarly taken and filed, but not used by the party taking it? Can a party thus trifle with the machinery of the law and avail himself of it if it suits his purposes, and reject it if it does not, and yet escape all the consequences of his acts? We hold he cannot.' "

We adhere to the holding in *Smith* v. *Clark,* but to apply the principle of that opinion to the case at bar would carry the rule beyond the reason for its existence. Here Hood's counsel simply propounded questions to Welch while both parties were living—a commonplace discovery procedure. It is plain that Hood's attorney was not attempting, in the language of *Smith,* to search the conscience of his adversary and then repudiate the result, or to trifle with the machinery of the law. Thus, during Hood's lifetime, the situation bore no resemblance to that in *Smith* v. *Clark.*

Nor did the adventitious fact of Hood's death bring the case within the reasons underlying the *Smith* decision. The two purposes of the dead man's statute, which applies only to statements and personal transactions, are to guard against the survivor's temptation to give false testimony with impunity and to put the litigants on terms of equality when death has deprived the personal representative of the opportunity to present his decedent's version of the transaction. Jones on Evidence, § 20:22 (6th ed., 1972); Barnhart, Theory of Testimonial Competency and Privilege, 4 Ark. L. Rev. 377 (1950). Both those objectives are still pertinent to the case at hand, even though Hood's attorney directed inquiries to Welch before Hood's death.

The question has troubled us primarily because the contrary conclusion has been reached in the only other state, Pennsylvania, where the precise question seems to have arisen. *Brown* v. *Saladoff,* 209 Pa. Super. 263, 228 A. 2d 205, 35 A.L.R. 3d 952 (1967); *Brennan* v. *Bell,* 37 Pa. D. & C. 2d 707

(1965); *Treharne* v. *Callahan*, 288 F. Supp. 131 (W.D. Pa. 1968). There the courts, citing some of the same authorities that we relied upon in *Smith* v. *Clark*, simply extended the rule to the fact situation that is now before us. For the reasons already stated we do not consider that extension to be sound and must therefore decline to follow the Pennsylvania decisions.

As a second point for reversal the appellant contends that the court should not have submitted to the jury the matter of construing the parties' lease, in an instruction which told the jury that doubts and uncertainties in the lease should be resolved against the party who was found to have prepared it. Of several objections made at the trial the only one now argued is that we held upon the former appeal that the rule in question is not applicable, because the lease was negotiated by the parties.

We do not so read our prior opinion. There we said: "Appellee argues that in the event of ambiguity, the uncertain terms should be construed most strongly against the person drafting the instrument; however, it appears disputed between the parties whether appellant unilaterally devised the lease or whether it was a product of negotiation." We take that sentence to mean not that the lease was undisputedly a negotiated one but that there was an issue of fact in that regard. Since the case is to be retried we should add that, depending upon the proof, the interpretation of the lease may or may not be a proper issue for the jury. See *Security Ins. Co. of Hartford* v. *Owen*, 252 Ark. 720, 480 S.W. 2d 558 (1972); *Triska* v. *Savage*, 219 Ark. 80, 239 S.W. 2d 1018 (1951).

Reversed.

HARRIS, C.J., not participating.